Oliver T. CARR, Jr., et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA et al.,**
Defendants.

Civ. A. No. 74–73.

United States District Court,
District of Columbia.

Feb. 12, 1974.

As Amended March 5, 1974.

See also, D.C., 312 F.Supp. 283.

William Joseph H. Smith, Washington, D.C., for plaintiffs.

A. Robert Singer, Asst. Corp. Counsel, Washington, D.C., for defendants.

## ORDER

FLANNERY, District Judge.

This case raises the question of whether the District of Columbia may charge abutting land owners a price based on market value for original United States alley space closed by the District under The Street Readjustment Act of the District of Columbia, D.C.Code 1973, Title 7, Chapter 4, 47 Stat. 747, December 15, 1932. It is before the court on cross-motions for summary judgment. Upon consideration of the memoranda submitted in support of and in opposition to the motions and the oral arguments of the parties, the court finds that there is no genuine issue as to any material fact and makes the following findings of fact and conclusions of law:

*Findings of Fact*

1. The plaintiffs, Oliver T. Carr, Jr. and George H. Beuchert, Jr., are trustees under a Joint Venture Agreement of The 1800 M Associates, and hold legal title to Lots 841, 874, 883, 840, 73, 24, 839, 882, 83, 836 and 84 in Square 140, the District of Columbia, for the use and benefit of The 1800 M Associates.

2. Defendant District of Columbia is a municipal corporation that maintained

the public alley abutting plaintiffs' land which is the subject of this suit.

3. The individual defendants, John A. Nevius, Sterling Tucker, Stanley Anderson, Rockwood H. Forster, Tedson Meyers, Dr. Marjorie H. Parker, Dr. Henry Robertson [Robinson] and the Reverend Carlton W. Veazey are members of the District of Columbia City Council which was vested pursuant to Reorganization Plan No. 3 of 1967 with certain regulatory and other functions formerly vested in the Board of Commissioners, including the closings of alleys in the District of Columbia under Section 7–401, D.C.Code.

4. On December 7, 1971, plaintiffs filed an application in the Office of the Surveyor of the District of Columbia for closing of the alley abutting Lots 875, 845, 844, 843, 842, 24, 839, 882 and 84, in Square 140. The stated purpose on the application for closing the alley space was to combine the abutting lots surrounding three sides of the alley in order to construct an office building. The entire portion of the alley space to be closed was an original alley owned by the United States.

5. The Surveyor of the District of Columbia sent plaintiffs' application for closing the alley for review to:

(a) Department of Highways and Traffic

(b) Department of Environmental Services

(c) Public Space Permits and Records Branch

(d) Fire Department

(e) Commission for Housing Program

(f) D. C. Public Space Committee

(g) National Capital Planning Commission,

which departments and agencies either approved the application, had no objections to the closing, or approved the application with certain contingencies which have been satisfied by plaintiffs.

6. The National Capital Planning Commission filed its recommendation to the District of Columbia Council in favor of closing the alley space and forwarded to the Council the Report of its Transportation Committee that states in part:

"The area in which the proposed alley closing is located is designated in the 'General Land Use Objectives: 1970/1985' element of the Comprehensive Plan for the National Capital as to the Central Employment Area. The office building development would be consistent with the Comprehensive Plan objectives for this area."

7. A public hearing on the alley closing application was held by the Transportation Committee of the District of Columbia City Council on May 8, 1972. No objections to the closing were made by abutting or nearby property owners or any department or agency of the District of Columbia.

8. On June 6, 1972, the District of Columbia City Council, pursuant to D.C. Code § 7–401 et seq. (1967), ordered the closing of the alley in Square 140 referred to above.

9. As owners of the property abutting the space to be closed, plaintiffs were ordered to pay to the Treasury of the United States the sum of $196,200.-00 representing the fair market value of the United States property to be closed. The plaintiffs contest the authority of the District to charge the fair market value for the alley space closed. The order that payment of other sums to the District of Columbia be made is not contested in this action.

10. Public Notice of the order closing the alley was given pursuant to Section 7–404 of the D.C.Code (1967) and abutting property owners were served with a notice of the order closing said alley dated June 12, 1972. No objections to the closing of the alley were filed within the 30-day period provided in Section 7–404.

11. Plaintiffs, Oliver T. Carr, Jr. and George H. Beuchert, Jr., the District of Columbia and The Riggs National Bank of Washington, D. C. as escrow agent, entered into an escrow agreement

dated December 5, 1972, whereby Carr and Beuchert deposited $196,200.00 with The Riggs Bank to hold in escrow, pending final legal determination of the authority of the District to charge market value for alley space closed. The District then caused an order and plat to be entered closing said alley.

12. Prior to 1967, it had been the policy of the Commissioners of the District of Columbia to permit alley space to revert to abutting property owners at no cost to them.

### Conclusions of Law

1. This is an action for declaratory judgment filed on January 12, 1973 pursuant to Title 28 U.S.C., Section 2201 concerning the authority of the defendants to charge the plaintiffs a price based on market value for alley space closed under the provisions of The Street Readjustment Act of the District of Columbia, D.C.Code 1967, Title 7, Chapter 4, 47 Stat. 747, December 15, 1932. The matter in controversy exceeds, exclusive of interest and cost, the sum of $50,000.

2. This court has jurisdiction under D.C.Code § 11–501(4) (1973), Act of July 29, 1970, Pub.L.No.91–358, § 111, 84 Stat. 476.

3. In taking any action with respect to alleys located in the District of Columbia, the District of Columbia may not act unless it acts under lawfully delegated authority. See Carr v. District of Columbia, 312 F.Supp. 283 (D.D.C. 1970), aff'd per curiam, No. 24,406 (U. S.App.D.C.1971).

4. The District of Columbia City Council and its members are authorized to close United States alleys in the District of Columbia pursuant to the provisions of The Street Readjustment Act of the District of Columbia, D.C. Code § 7–401 (1967), supra, and the Reorganization Plan No. 3 of 1967, Section 402(161), D.C.Code (1967).

5. Any money received by the District of Columbia for the sale of closed alley space owned by the United States must be deposited by the District in the United States Treasury for the benefit of the overall United States revenues, not District of Columbia accounts or revenues.

6. Although any money received by the District must be deposited into the United States Treasury, the United States cannot be joined as a party in this action. The United States has waived sovereign immunity in the district court for claims against it for money damages not exceeding $10,000 in amount, 28 U.S.C. § 1346(a)(2) (1970). Since this claim involves amounts in excess of $50,000, the United States cannot be joined. See Washington Medical Center, Inc. v. District of Columbia, Civil Action No. 1093–71 (D.D.C., April 11, 1972) (Corcoran, J.).

7. Since the United States cannot be joined, the court must determine whether the United States is an "indispensable" party to this action. Fed.R.Civ.P. 19(b).

8. In this action the United States is not an indispensable party within the meaning of Fed.R.Civ.P. 19(b). Plaintiffs here seek a declaratory judgment. The sole issue raised is whether the District of Columbia has authority to charge plaintiffs the fair market value for alley space closed pursuant to The Street Readjustment Act of the District of Columbia, supra. Congress has delegated to the District of Columbia complete authority to close United States alleys. See ¶ 9, infra. Therefore, a judgment rendered in the United States' absence would be entirely adequate and would not prejudice United States' interests. More importantly, since the funds at stake in this action have not been deposited into the United States Treasury, but instead have been placed in an escrow account in The Riggs National Bank, judgment here for plaintiffs would neither run against nor be satisfied from United States funds. Rather, judgment would simply declare the rights of the parties who represent all the necessary interests in such escrow

funds. In addition, no party would be subject to the threat of double liability which would be present had the District of Columbia already received and paid the funds to the United States.

9. Section 7–401 reads in pertinent part:

"The [District of Columbia City Council is] authorized to close any . . . alley, in the District of Columbia when, in the judgment of said [City Council] such . . . alley, has been rendered useless or unnecessary, the title to the land embraced within the public space so closed to revert to the abutting property . . .: *Provided,* That if the title to such land be in the United States the property shall not revert to the owners of the abutting property but may be disposed of by the [City Council] to the best advantage of the locality and the properties therein and thereby affected . . .; or also said property be sold as provided in section 7–302 of this title. . . ."

10. When the District of Columbia pursuant to D.C.Code § 7–401, *supra,* determines that a United States alley is useless and unnecessary and decides to close it, title to the alley does not automatically revert to the owners of the property abutting the area to be closed. Rather, title (1) may be disposed of to the best advantage of the locality and the properties therein and thereby affected, or (2) may be sold as provided in D.C.Code § 7–302 (1967) for the account of the United States. D.C. Code § 7–401 (1967), 47 Stat. 747, Dec. 15, 1932. *See also,* Calvin-Humphrey Corp v. United States, 480 F.2d 1323 (Ct.Cl.1973).

11. The District of Columbia may not charge abutting property owners the fair market value of the public space owned by the District of Columbia which reverts to them when an alley is closed, unless an objection to the closing is made, Carr v. District of Columbia, *supra*; 1776 K Street Associates v. District of Columbia, Civil Action No. 2015–70 (D.D.C.April 6, 1973).

12. When closing original United States property under the terms of D.C.Code § 7–401 the District of Columbia City Council may, for the account of the United States, charge abutting property owners the fair market value of the space closed. Section 7–401 distinguishes between United States and District of Columbia land and gives the City Council express authority to charge for United States property. Thus, it reflects a congressional purpose to allow the District of Columbia to consider the interests of the United States as well as *its own interests when it disposes of* Federal land. The *Carr* decision, which held that the purposes of the Act prevent the District of Columbia from charging for its own land, does not control here. Because this case involves an original United States alley the fact that advantages accrued to the District of Columbia by its closing does not preclude the District from adding conditions for the benefit and protection of the United States. Moreover, the court does not believe such a conclusion is inconsistent with the intention of Congress, as expressed in *Carr,* that § 7–401 be used to stimulate commercial real estate development in the District of Columbia.

13. The options afforded the District of Columbia by Section 7–401 in dealing with United States property are not mutually exclusive. The plaintiffs apparently concede that the District has authority to sell land so closed but contend that such authority applies only when the City Council is unable to dispose of the alley space in a manner which is advantageous to the locality and surrounding property affected. Such a contention is an unreasonable restriction on the flexibility § 7–401 on its face gives to the City Council when it acts to close a United States alley. Moreover, there is nothing in the language of the statute which mandates or suggests a priority between the specified options.

14. Finally, the right under Section 7–401 to charge for United States property does not apply only when the District of Columbia closes a United States alley on its own initiative. Such reasoning finds no support in the language of the statute.

It is, therefore, this 12th day of February, 1974,

Ordered that the Motion for Summary Judgment filed by the plaintiffs be, and the same hereby is, denied; and

It is further ordered that the Motion for Summary Judgment filed by the defendants be, and the same hereby is, granted.