**BLAKE CONSTRUCTION CO., INC., Appellant,**

v.

**DISTRICT OF COLUMBIA et al., Appellees.**

No. 13202.

District of Columbia Court of Appeals.

Submitted Jan. 17, 1979.

Decided March 1, 1979.

Robert F. Condon, Washington, D. C., was on brief, for appellant.

Louis P. Robbins, Acting Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, and Dennis McDaniel, Asst. Corp. Counsel, Washington, D. C., were on brief, for appellees.

Before KELLY, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

The appellant seeks reversal of an order denying its motion for summary judgment and granting the appellees' motion for summary judgment. Appellant contends, as a matter of law, that (1) the District of Columbia City Council may not rescind its conditional vote to close a public alley under D.C.Code 1973, § 7–401 *et seq.*, (2) that such a recision works a "taking" of property for a public purpose and, under the Fifth Amendment, requires the payment of compensation, and (3) that the Council employed statutorily impermissible criteria in determining to rescind the vote, thereby invalidating the recision. We affirm.

I

In 1966, and again in 1968, the appellant's predecessor in interest[1] applied to the office of the Surveyor of the District of Columbia to close a certain public alley. Upon an agreement to pay to the District the fair market value of the alley property that was to pass, the District of Columbia City Council held a public hearing on the closing, at which no objection to the closing was made. Thereafter, pursuant to D.C.Code 1973, § 7–401, the request for closing was submitted to the National Capital Planning Commission (NCPC), which on September 12, 1968, recommended against the closing.[2] Approximately one month later, on October 22, 1968, however, the Council approved a resolution ordering that the alley be closed, but expressly conditioned the resolution upon the payment of a sum representing the fair market value of the reverting property. The resolution further ordered the District Surveyor, upon the payment of the sum, to notify the abutting property owners and the public in general, pursuant to D.C. Code 1973, § 7–404. According to § 7–404, if no objection is received within 30 days of

the notice, the Surveyor is to record the closing on the plat maps. The Council expressly stated in the resolution, however, that the order would not become effective until § 7–404 had been complied with, and that, if the order did not become effective, the sum, representing the fair market value, would be refunded.

The sum was never paid and consequently no notice was ever given and the plats were never adjusted to reflect the alley closing. In April of 1970, the United States District Court for the District of Columbia held that a party, in a situation similar to that of the appellant's predecessor in interest, was not lawfully bound to pay the fair market value of the land returning to private use. *Carr v. District of Columbia*, 312 F.Supp. 283 (D.D.C.1970). Contending that *Carr* forecloses the District from requiring the payment of the fair market value, the appellant and its predecessor refused and continue to refuse to pay the amount specified in the resolution.

Although it is unclear from the record, apparently the Council was unaware of the negative NCPC recommendation at the time the Council voted, despite the recommendation having been made a month prior to the resolution. In October of 1970, an additional hearing was held to discuss the NCPC recommendation. In March of 1971, the Council voted to deny the application for closing, thus voiding the October 1968 resolution. Following the second vote, the appellant unsuccessfully sued for a judgment declaring that the street was closed, and for compensation for deprivation of its property in violation of the Fifth Amendment. This appeal followed the grant of summary judgment for the appellees.

II

▮▮▮ The trial court did not err when it declined to declare the street closed. The

1. Mr. Edward Dreyfuss was the original applicant and although it is unclear from the record how Dreyfuss and the appellant are related, we assume that Dreyfuss was Blake's predecessor.

2. The NCPC's recommendation was motivated by a desire to encourage the preservation of a historical landmark, Halcyon House. Although Halcyon House has never received any official

historical designation, the NCPC nevertheless maintains that it has significant historical value. Its preservation is encouraged by a negative recommendation because if the alley were to close, the parcel on which the house is located would likely be consolidated with other parcels to permit a large commercial building to be constructed.

appellant implicitly agrees that the Council may amend or rescind an order prior to its becoming final, but contends that the first resolution was a final order, which but for the completion of certain ministerial acts, closed the street. We disagree. By its terms, the order was conditioned on the payment of a sum that has never been paid. The appellant was not a party to *Carr* and therefore we question whether *Carr*, a United States District Court decision, relieves the appellant's obligation to pay.[3] This issue need not be resolved because, according to D.C.Code 1973, § 7–404, the Council's order is ineffective at least until 30 days following the publication and service of notice of the order, which has never been accomplished. Accordingly, the first order was never final and the Council could properly rescind it. There are no allegations of bad faith or fraud. While D.C.Code 1973, §§ 7–401 to –404 do not expressly allow the Council to reconsider a vote prior to its becoming final, equity demands that a second vote may be taken where, as here, by inadvertence or mistake an important recommendation is not considered in a vote. The appellant does not claim to have relied to its detriment on the Council's first resolution. The record is utterly devoid of equitable considerations weighing in the appellant's favor. As an equitable remedy is sought, there was no error when the trial court granted the District's motion for summary judgment.

■ The appellant's second argument, that it was denied its Fifth Amendment right to compensation, borders on frivolity. "It is not the alley which is the property Blake claims it is being effectively deprived of in connection with this theory of recovery, but the property upon which is contained Halcyon House." Appellant's Brief at 9. Although the record reflects that the appellant owns the parcel upon which Hal-

cyon House is situated,[4] there is no indication that the District has "taken" any portion of the parcel or of the house. The appellant is no worse off following the application's denial than before its submission. As we discussed above, the Council's first vote never effected a closing. Consequently, no rights vested in the appellant as a result of the first vote and no rights could, therefore, be divested by the second vote. The appellant states that the second vote constituted "an order to maintain private property for the public benefit at private expense," appellant's brief at 9, yet does not specify the nature or extent of the maintenance or of the expense. The appellant cites no legal authority to support its position. There is no indication that the trial judge erred.

■ Appellant claims that the Council must not, as a matter of law, be swayed by historical considerations, quoting a "definition" of public interest from *Chevy Chase Citizens Ass'n v. District of Columbia Council*, D.C.App., 327 A.2d 310, 316 (1974) (en banc). The quotation terminates just short of the relevant portion of the case. Footnote 17 and the accompanying text indicate that an NCPC recommendation should be considered. The last proviso of D.C.Code 1973, § 7–401, expressly provides that any proposed closing be referred to the NCPC for its recommendation. The Council did not err in considering the recommendation.

### III

There being no merit to the appellant's contentions that the trial judge erred in not declaring the street closed and in not awarding the appellant compensation, we affirm.

*Affirmed.*

---

3. *Carr* was affirmed, per curiam, without an opinion, on September 28, 1971 (No. 24,406). As the affirmance was subsequent to the effective date of the 1970 Court Reorganization Act, it is not binding on this court. *See M. A. P. v. Ryan*, D.C.App., 285 A.2d 310 (1971) (effective date is February 1, 1971). Furthermore, under

Rule 8(f) of the United States Court of Appeals for the District of Columbia Circuit, unpublished dispositions are not intended to be precedent.

4. *See* note 2 *supra*.